IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Dorothy G. Burwell, ) | |
| ) | Civil Action No. 6:04-1358-HMH-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| American Retirement Corporation ) | |
| d/b/a Homewood Residence at ) | |
| Cleveland Park, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In her complaint, the plaintiff alleges against the defendant, her former employer, five causes of action: age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), retaliation in violation of the ADEA, breach of contract, breach of the covenant of good faith and fair dealing, and breach of contract accompanied by a fraudulent act.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The plaintiff was hired by ARC on or about January 28, 2003, as the Dining Services Coordinator of its Homewood assisted living facility in Greenville, South Carolina. In this position, the plaintiff was the manager of the dining room at the facility. She was responsible for all aspects of its operation, including hiring, training, scheduling, evaluating,

and supervising the kitchen staff; overseeing service to residents by care associates; ensuring that meals were prepared timely and to company standards; ordering food and supplies; and ensuring that she stayed within the budget for the dining room.  As a manager, the plaintiff was also responsible for "establish[ing] and maintain[ing] constructive working relationships with co-workers," "promot[ing] teamwork in providing services to residents," and "convey[ing] a positive and professional image to residents, family members and co-workers."  The plaintiff signed a copy of these job responsibilities at the beginning of her employment.  As Dining Services Coordinator, the plaintiff reported directly to and was supervised by the Residence Manager.

Reatha Connelly became the Residence Manager of the defendant's Greenville facility in August 2003.  At the time, Connelly was 34 years old, and the plaintiff was 60 years old.  Connelly's management style was considered a "drastic change" from the previous residence manager; she was more direct and exercised more control than her predecessor.  The plaintiff considered Connelly to be "harsh" and "stern" to her as well as to other managers (also referred to as "key associates").  On or around September 27, 2003, the plaintiff complained to Trubal O'Dowdy, Corporate Director of Dining Services, that she did not like Connelly's management style.  The plaintiff also told O'Dowdy that she wanted to resolve her issues with Connelly.  O'Dowdy facilitated a meeting between the plaintiff and Connelly; however, during the meeting, O'Dowdy found the plaintiff to be insubordinate and unprofessional to Connelly.

Also, Connelly frequently reported to the dining room to address employee complaints about the plaintiff and to calm the plaintiff down.  One employee called ARC's integrity line to complain about the plaintiff and another filed a charge of discrimination alleging that the plaintiff discriminated against her because of her race.  Connelly also considered the plaintiff's behavior toward her to be disrespectful, insubordinate, and unprofessional. Connelly called the corporate Human Resources (HR) office to discuss her

problems with the plaintiff's behavior. Meanwhile, the plaintiff also called HR to complain about Connelly. After she complained about Connelly, Connelly's behavior toward her improved.

On or around October 29, 2003, the new Regional Director of Human Resources, Diane Booker, came to the Greenville facility to investigate the plaintiff's complaint. She interviewed the plaintiff and Connelly, separately and together, as well as other employees at the facility. Booker found the plaintiff's attitude toward Connelly to be inappropriate, unprofessional, and insubordinate. During her investigation, the plaintiff remarked to Booker that "it's obvious that she wants to replace me with someone younger." The plaintiff admits this is the first and only time that she remembers complaining that Connelly was treating her differently because of her age. The plaintiff and Connelly both told Booker that they did not believe they could continue to work together. Connelly's complaints about the plaintiff were echoed by other employees who complained that the plaintiff threatened staff members, screamed at them, was rude, was moody, and was not a good manager. Booker concluded that the plaintiff was a source of problems at the Greenville facility.

Booker reported the results of her investigation to District Director John Moore, and Vice President of Operations Ron Aylor. She also expressed a concern that the plaintiff's abusive management style could lead to the departure of many longtime employees. Moore and Aylor determined that the plaintiff's behavior and working relationship with Connelly was beyond repair and that her insubordination to Connelly was disruptive to the facility. They decided to terminate the plaintiff's employment. Connelly did not participate in this decision. Booker and Connelly met with the plaintiff on November 18, 2003, when Connelly informed the plaintiff that she was being discharged because "it was in the best interest of the company."

3

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather the non-moving party must demonstrate that specific material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*,

759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **ANALYSIS**

### *Age Discrimination*

In order to prove an ADEA claim, an employee may proceed under ordinary principles of proof using direct evidence or if using indirect evidence under the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).  *See Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000); *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (applying *McDonnell Douglas* framework in ADEA context).  The allocation of proof under *McDonnell Douglas* is as follows:  (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant-employer to articulate a legitimate reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination.  *Texas Dept. of Community*

*Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802-03).

In her complaint, the plaintiff alleges that she "was treated disparately and more harshly in the terms and conditions of her employment than workers who were under forty years of age" and that she was replaced by a substantially younger employee (compl. ¶¶ 14-15). The plaintiff suggests that her "claims for age discrimination were not just for discharge" but that her "age discrimination claim is really that she was harassed and singled out for treatment because of her age" (pl. opp. 10-11). Accordingly, the court will evaluate her discharge as well as her working environment to determine whether either was motivated by a discriminatory age-related animus.

**Hostile Environment**

> To state a hostile work environment claim, [the plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her . . . age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

*Bass v. E.I. Dupont de Nemours*, 324 F.3d 761, 765 (4th Cir. 2003). Here, even viewing the evidence in a light most favorable to the plaintiff, she fails to present sufficient evidence that the harassment was based upon her age or that there is some basis for imposing liability on the defendant.

To establish that age was the motivating factor for her harassment, the plaintiff relies only on her allegation that Connelly treated younger workers more favorably than older workers. However, the only younger worker to whom she compares her treatment is Connelly herself. The plaintiff argues "Defendant's focus on Plaintiff's alleged deficiencies while wholly ignoring those of Reatha Connelly, a significantly younger female, shows more favorable treatment for ARC's younger workers, including Ms. Connelly" (pl.

opp. 12). The plaintiff does not cite specific examples of how she and Connelly were treated differently. Even if she did, however, Connelly was the plaintiff's supervisor. "To be 'similarly situated' for the purpose of our discrimination jurisprudence, the two individuals or situations must be similar 'in all relevant aspects.'" *Cardona Jimenez v. Bancomerico de Puerto Rico*, 174 F.3d 36, 42 (1st Cir. 1999). As her supervisor, Connelly cannot be similarly situated to the plaintiff; thus, she is not a proper comparator for purposes of this evaluation.

Moreover, comparing her treatment by Connelly with the way Connelly was treated does not establish that *Connelly's* treatment of the plaintiff was motivated by discriminatory age animus. Indeed, the plaintiff admits that she never heard Connelly – or any other ARC manager – make any age-related remarks or jokes. Other than her unsubstantiated belief that Connelly wanted to replace her with someone younger, the plaintiff has no evidence that Connelly's actions toward her were motivated by discriminatory intent. Self-serving, unsubstantiated allegations are not sufficient to defeat summary judgment. *Evans v. Technologies Applications & Services Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

Furthermore, neither the frequency nor the severity of Connelly's conduct toward her is sufficient to rise to the level of actionable harassment. According to the plaintiff, the earliest act of discrimination occurred on September 25, 2003. Less than two weeks later, on October 6, 2003, she complained about Connelly to the defendant's HR department. Notably, she admits that the harassment stopped after she lodged her complaint; she specifically admits that Connelly "stopped yelling at me" and the tension level between them had improved. At best, the plaintiff's allegations "merely tell a story of a workplace dispute [with a new supervisor] and some perhaps callous behavior by [Connelly]. They do not describe the type of severe or pervasive . . . age based activity necessary to state a hostile work environment claim." *Bass*, 324 F.3d at 765. The plaintiff cannot establish a hostile work environment claim under these circumstances.

7

**Termination**

To establish a *prima facie* case of age discrimination as it relates to her discharge, the plaintiff must show: (1) she was protected by the ADEA; (2) she was qualified for the position she filled and performed at a level that met her employer's reasonable expectations; (3) she was discharged despite her performance; and (4) she was replaced by someone substantially younger despite her qualifications. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998). The defendant contends that the plaintiff cannot establish the second or fourth elements of a *prima facie* case. Even if the plaintiff can establish a *prima facie* case of age discrimination, the defendant claims that it has articulated a legitimate, non-discriminatory reason for her discharge – for which the plaintiff has no evidence to demonstrate that it is pretext for age discrimination.

The plaintiff was discharged after she and her supervisor – Residence Manager Connelly – agreed that they could no longer work with each other. An investigation confirmed that Connelly was not the only employee at the defendant's Greenville facility who had complaints with the plaintiff's job performance. Employees who were supervised by the plaintiff also described the plaintiff as threatening, rude, moody and unprofessional. At least two employees had lodged official complaints against the plaintiff – one contacted the defendant's integrity line and the other filed a charge of race discrimination against her with the EEOC. In light of these complaints and her admitted unwillingness to work with the Residence Manager, the defendant decided to terminate the plaintiff. This is a legitimate, non-discriminatory reason for the defendant's action.

The burden then shifts back to the plaintiff to show by a preponderance of the evidence that the reason given is pretext for discrimination. In *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's prima facie case, does not compel judgment for the plaintiff, because "[i]t is not enough . . . to *dis*believe the employer; the factfinder must

8

*believe* the plaintiff's explanation of intentional discrimination." *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert an anti-discrimination statute into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

The plaintiff has failed to meet her burden of showing pretext. The plaintiff bases her age claim on the alleged age-related animus of her supervisor, Connelly. In *Reeves*, 530 U.S. 133, an ADEA case, the United States Supreme Court found that "the person allegedly acting pursuant to a discriminatory animus need not be the 'formal decisionmaker' to impose liability upon an employer for an adverse employment action, so long as the plaintiff presents sufficient evidence to establish that the subordinate was the one 'principally responsible' for, or the 'actual decisionmaker' behind, the action." *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 288-89 (4th Cir. 2004) (quoting *Reeves*, 530 U.S. 151-52). The plaintiff has not presented evidence sufficient to establish that Connelly was the actual decisionmaker or the one principally responsible for her termination. Viewing the evidence in a light most favorable to the plaintiff, the plaintiff has offered no evidence of age-related animus by Moore and/or Aylor, nor has she offered evidence to tie Moore or Aylor to Connelly's alleged bias. Similarly, the plaintiff offers no evidence of age-related animus by Booker, who conducted the investigation and who recommended the plaintiff's discharge. At this point, the plaintiff's conclusory allegations

of age discrimination are insufficient as a matter of law to survive a motion for summary judgment. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) (holding "plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action"). The plaintiff has not met her burden of showing pretext; thus, summary judgment should be granted for the defendant.

*Retaliation*

To prove a *prima facie* case of retaliation requires that (1) the plaintiff engaged in protected activity; (2) the employer took adverse employment action against the plaintiff; and (3) a causal connection existed between the protected activity and the adverse action. *Williams v. Cerberonics*, 871 F.2d 452, 457 (4th Cir. 1989) (applying *McDonnell Douglas*). Here, for the purposes of this motion, the defendant does not dispute that the plaintiff has established the second element of a *prima facie* case (def. mem. 22). The defendant contends, however, that she cannot establish the first or third elements of protected activity or a causal connection. Further, the defendant contends that the plaintiff cannot show that its legitimate, non-retaliatory reason for discharging her was pretext for retaliation.

The defendant contends that the plaintiff did not complain to anyone at ARC that she thought Connelly was harassing her or treating her differently because of her age. The plaintiff maintains that she told Trubal O'Dowdy and Diane Booker that Connelly was trying to replace her with someone younger. It is not necessary for the court to evaluate whether this type of complaint qualifies as "protected activity." Assuming for purposes of this motion that it does, the plaintiff cannot establish that her termination was "because of" her protected activity. At her deposition, the plaintiff testified that she had no evidence

other than the timing of her termination to support her retaliation claim – "[b]ecause I got fired after I complained" (pl. dep. 257).

In *Dowe v. Total Action Poverty in Roanoke Valley*, 145 F.3d 653 (4th Cir. 1998), the Fourth Circuit explained:

> To satisfy the third element, the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.

145 F.3d at 657 (citations omitted). As discussed above, the actual decision to discharge the plaintiff was made by Moore and Aylor – not O'Dowdy or Booker. The plaintiff has presented no evidence that either Moore or Aylor had any information regarding the plaintiff's belief that Connelly was trying to replace her with someone younger. Because the decision-makers did not have knowledge that the plaintiff engaged in activity protected by the ADEA, the plaintiff cannot establish a causal connection between her comment and her discharge.

Even if the evidence was sufficient to establish a *prima facie* case of retaliatory discharge, the defendant has presented a legitimate, non-retaliatory reason for discharging the plaintiff. Indeed, the plaintiff admitted that she could no longer work with Connelly. As discussed above, the defendant terminated the plaintiff because of her admitted unwillingness to work with her Residence Manager, coupled with the concerns with her management style and its effect on other employees in the facility. This is a legitimate, non-discriminatory reason for the adverse employment action. The plaintiff offers no further evidence to establish that this reason was pretext for retaliation. Accordingly, the plaintiff's retaliation claim cannot survive summary judgment.

*Contract Claims*

The plaintiff also alleges state law causes of action for breach of contract, breach of contract accompanied by a fraudulent act, and breach of the covenant of good faith and fair dealing. As it is recommended that summary judgment be granted on the plaintiff's federal claim, the court should decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. *See* 28 U.S.C. §1367(c).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, summary judgment should be granted on the plaintiff's age discrimination and retaliation claims, and the court should decline to exercise jurisdiction over the remaining state law claims.

>     s/William M. Catoe
>     United States Magistrate Judge

April 11, 2005

Greenville, South Carolina